NO.  95-353

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

STATE OF MONTANA, CITY OF BOZEMAN,

Plaintiff and Respondent,

v.

JOHN YANKOWSKI,

Defendant and Appellant.


APPEAL FROM:  District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Larry W. Moran, Judge presiding.


COUNSEL OF RECORD:

For Appellant:

John Yankowski, pro se, Bozeman, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General,
Patricia J. Jordan, Assistant Attorney
General, Helena, Montana

Susan Wordal, Bozeman City Prosecutor,
Bozeman, Montana

Submitted on Briefs:  October 24, 1996

Decided:  December 17, 1996

FILED

Filed:  DEC 17 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice Charles E. Erdmann delivered the opinion of the Court.

Pursuant to Section I, Paragraph 3 (c), Montana Supreme Court 1995 Internal Operating Rules, the following decision shall not be cited as precedent and shall be published by its filing as a public document with the Clerk of the Supreme Court and by a report of its result to State Reporter Publishing Company and West Publishing Company.

John Yankowski was convicted of the offense of criminal trespass to property in violation of § 45-6-203, MCA, by a six-person jury. Yankowski appeals the sentence and judgment entered by the Eighteenth Judicial District Court, Gallatin County. We affirm the judgment of the District Court. Further, we affirm the sentence in part, vacating the condition that Yankowski write a formal letter of apology.

The issues on appeal are as follows:

1. Did Yankowski's conviction for criminal trespass violate his right to freedom of speech under the First Amendment?

2. Did the District Court err in limiting the cross-examination of the witnesses on their views of abortion?

3. Did the District Court err in denying Yankowski's motion for directed verdict?

4. Did the District Court abuse its discretion in denying Yankowski's motion to dismiss alleging failure of the citation to comply with the requirements under § 46-11-401, MCA?

2

5. Did Yankowski properly preserve the issue regarding the condition of his sentence requiring him to write a letter of apology?

6. Did the District Court err in stating that the Bridger Clinic was conducting a lawful activity and improperly refuse proposed sentencing exhibits?

7. Was the issue of justification under § 45-3-102, MCA, properly raised?

8. Was Yankowski's sentence excessive?

9. Was the motion for mistrial improperly denied?

10. Did Yankowski waive his right to counsel on appeal?

FACTS

On September 25, 1993, Shelley Videon, an employee of Bridger Mountain Family Planning ("Bridger Clinic") was setting up for a mother-daughter workshop at the Pilgrim Congregational Church in Bozeman. The church is not open, except on Sunday; however, the church rents out its facilities as a community service. Videon rented the church space for $10 and obtained the key to the building. The workshop was advertised through posters, press releases in the newspaper, and public service announcements on radio and television. The participants were required to preregister and pay a $12 fee.

There were three women outside picketing the workshop by the church door. Videon informed them that the workshop was not about birth control, abortion, or sex, and asked them to leave. The

3

protestors did not leave, and the workshop facilitators had to escort the participants into the church. As Videon and another facilitator of the workshop, Kristi Campbell, were standing at the registration table, Yankowski approached them. Campbell knew Yankowski was an abortion protestor and testified at trial that she was afraid of him because she did not believe he acted rationally. This testimony was objected to by defense counsel and counsel moved for a mistrial, which was denied. Campbell testified she opened the door for Yankowski and requested that he leave. Yankowski refused and began to "thrash" around, so Campbell backed off.

Both facilitators followed Yankowski into the room where the participants were waiting. Videon and Campbell repeatedly asked him to leave. Yankowski, however, addressed the participants, telling them they should not have their daughters there to be subjected to the influences of the Bridger Clinic. He then placed anti-abortion literature on the laps of the participants. He also tried to leave his literature on the resource table, but was told by Campbell that their policy was to exclude outside sources.

Campbell attempted to call the police, but Yankowski picked up another phone and pressed the switch. She dialed again and informed the police that a man was interrupting their workshop and requested that he be removed. Yankowski sat down on the couch and refused to move. When the police arrived, he headed for the sanctuary. He was then arrested for criminal trespass.

On June 22, 1994, Yankowski was convicted of misdemeanor criminal trespass by a jury in City Court. He appealed this determination and was tried *de novo* in District Court. The State moved in limine to exclude all information regarding "what an abortion is, when life begins or religious or moral justification for action" and "any evidence that would support any of the affirmative defenses listed in § 46-15-323(2)." The State argued that Yankowski's views on abortion were not relevant to the issue of whether he trespassed on private property. Yankowski stipulated to the motion, stating he was not attempting to justify his conduct by reference to a higher cause or moral imperative. Yankowski then moved to dismiss the charge for failure of the citation to state an offense. This motion was denied.

The six-person jury returned a verdict of guilty of the misdemeanor charge of criminal trespass. Yankowski was sentenced to six months in jail with all but ten days suspended, and a $500 fine. He was also ordered to write a letter of apology to the Bridger Clinic, and to Reverend Wagner and the Pilgrim Congregational Church. Yankowski appeals the conviction and judgment.

ISSUE 1

Did Yankowski's conviction for criminal trespass violate his right to freedom of speech under the First Amendment?

Yankowski argues that anti-abortion speech is not excluded from protection under the First Amendment. Yankowski also argues

*5*

that the church, which was being used by a private organization, was "obviously a public forum," and therefore his activities were all protected activities.

The United States Supreme Court has held that private property owners may exclude persons from exercising First Amendment rights upon private property. Lloyd Corp., Ltd. V. Tanner (1972), 407 U.S. 551. This Court has similarly rejected the assertion that an individual has an unfettered right to access private property for the purposes of exercising his freedom of speech. City of Helena V. Krautter (1993), 258 Mont. 361, 852 P.2d 636.

In Lloyd, the U.S. Supreme Court determined that an owner of a privately-owned shopping mall could prohibit persons from distributing anti-war handbills in the mall where the handbills "had no relation to any purpose for which the center was built and being used." Lloyd, 407 U.S. at 564-67. The Court concluded that the shopping mall's invitation to the public was limited to the business use of the mall, and that the protestors had other alternatives for distribution of their message in public areas.

Here, it is clear that invitation to the public to attend the mother-daughter workshop was limited to the subject matter as presented by the private organization. The testimony at trial was that the discussion was not to include sex, birth control, or abortion issues. The testimony at trial also established that the church was open to the public only on Sundays and was otherwise locked unless rented to a private organization. Yankowski has made

no showing that the church was transformed from private property into quasi-public property by the renting of the facility to another private organization. He admitted that he knew the church or a person authorized by the church, or the police, could lawfully terminate his license or privilege to remain. Furthermore, even if the church was considered a quasi-public forum during the workshop, Yankowski had other alternatives for distribution of his message, including protesting out on the sidewalk and distributing his literature there.

We therefore determine that Yankowski's rights under the First Amendment were not violated by his conviction of criminal trespass upon the private property at issue here.

ISSUE 2

Did the District Court err in limiting the cross-examination of the witnesses on their views of abortion?

Yankowski argues his right to confrontation, as guaranteed by the Sixth Amendment to the U.S. Constitution, and Article II, Section 24, of the Montana Constitution, was denied when the District Court restricted cross-examination as to the witnesses' beliefs concerning abortion. These witnesses, which Yankowski alleges the court precluded him from admitting evidence showing bias, prejudice or ulterior motives, include Videon, Campbell, and Connie Foiles. The State contends that the threshold level of inquiry was allowed.

7

A defendant's right to demonstrate the bias or motive of prosecution witnesses is guaranteed by the Sixth Amendment right of confrontation. Alford v. United States (1931), 282 U.S. 687. This Court has held that the trial court's discretion in exercising control pursuant to Rule 611(a), M.R.Evid., becomes operative only after the constitutionally required threshold level of inquiry concerning the witness's bias or motive to testify falsely has been met. State v. Gommenginger (1990), 242 Mont. 265, 790 P.2d 455. Thus, the State argues that a district court errs only if it cuts off all inquiry into the possible bias of the witness.

The District Court granted the State's motion in limine to exclude evidence on abortion or justification of conduct based upon pro-life views. The court stated that Yankowski would be allowed to introduce evidence explaining the reason for his behavior and would also be allowed to cross-examine witnesses on the issue of whether or not their views on abortion resulted in bias either for the State or against Yankowski.

Yankowski asserts that the court did not allow him to question Videon, Campbell, or Foiles on their possible bias. The record, however, does not support his assertion. The District Court allowed inquiry by Yankowski of Videon as to her professional views of abortion. She explained that there were three legal options for pregnant women--adoption, keeping the child, or abortion. After further questioning, the State objected to the line of questioning. The court sustained the objection because the witness had testified

8

that the workshop had a purpose, and that that purpose was to delve into issues of puberty and open communication between mothers and daughters. The court asked the witness whether abortion was a topic. Videon replied that it definitely was not a topic for discussion at the workshop. The court also allowed Campbell, over Yankowski's objection, to testify that she had had prior dealings with Yankowski and was afraid of him. Finally, Yankowski attempted to question Connie Foiles, a mother who attended the workshop, regarding her statement that she did not want her daughter to see the literature Yankowski was distributing because it contained photographs of aborted fetuses. Yankowski's counsel asked, "Well, why would you not want to see aborted fetuses?" The District Court sustained the State's objection to this question on the basis of relevancy.

The court did not abuse its discretion by denying further questioning of the witnesses once it was determined that abortion was not the subject of the workshop and once it was established that the witnesses' opinions on abortion were not relevant to the issue of interest or bias. The District Court allowed the constitutionally required threshold level of inquiry concerning the witnesses' biases or motives to testify falsely and did not abuse its discretion by limiting further inquiry.

ISSUE 3

Did the District Court err in denying Yankowski's motion for directed verdict?

The decision to direct a verdict of acquittal lies within the sound discretion of the district court and will not be disturbed on appeal absent an abuse of discretion. State v. Moore (1994), 268 Mont. 20, 64, 884 P.2d 457, 484. The standard of review for a trial court's motion for directed verdict is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. State v. Mummey (1994), 264 Mont. 272, 871 P.2d 868.

Yankowski argues that at the close of the State's case the State failed to prove that he had remained after being asked to leave by the landowner or other authorized person pursuant to § 45-6-201, MCA. Yankowski asserts that neither facilitator was an "authorized person" under the statute and therefore they did not have the authority to ask him to leave. The State asserts that because a tenant has the exclusive right of possession of the premises under Montana law, they also have the right to deny Yankowski the license, invitation, or privilege to enter or remain on the premises.

The offense of criminal trespass pursuant to § 45-6-203, MCA, is defined as when a person knowingly enters or remains unlawfully in an occupied structure or enters or remains unlawfully in or upon the premises of another. Section 45-6-201(1), MCA, defines "enters or remains unlawfully" as follows:

> A person enters or remains unlawfully in or upon any vehicle, occupied structure, or premises when he is not

10

licensed, invited, or otherwise privileged to do so. Privilege to enter or remain upon land is extended either by the explicit permission of the landowner or other authorized person or by the failure of the landowner or other authorized person to post notice denying entry onto private land. The privilege may be revoked at any time by personal communication of notice by the landowner or other authorized person to the entering person.

The church financial secretary testified that the people who rent the facility pick up the key and are in control of the facility. The Bridger Clinic rented the facility, had the keys, and had the right to control the premises during their rental period. This would include the right to deny Yankowski the privilege to remain on the premises. Welsh v. Pritchard (1952), 125 Mont. 517, 241 P.2d 816 (concluding that a tenant has the exclusive right of possession of the premises, including the right to exclude the landlord). We therefore determine that the District Court did not abuse its discretion in denying Yankowski's motion for directed verdict.

## ISSUE 4

Did the District Court abuse its discretion in denying Yankowski's **motion** to dismiss alleging failure of the citation to comply with the requirements under § 46-11-401, MCA?

Yankowski moved to dismiss the charge for failure of the citation to state an offense under § 45-6-203, MCA, and to comply with the requirements of § 46-11-401, MCA. He argues that the charge which states "failure to leave a building when asked to do so" **is** not the equivalent of "enters or remains unlawfully in an occupied structure." He also asserts that the citation is not

11

sufficiently specific when it refers to a "building" instead of an "occupied structure."

The general rule in Montana is that an information is sufficient if it properly charges an offense in the language of the statute describing the offense. State v. Matt (1990), 245 Mont. 208, 799 P.2d 1085; State v. Matson (1987), 221 Mont. 36, 736 P.2d 971. The test is simply whether a person of common understanding would know what is intended to be charged. Matt, 799 P.2d at 1088.

The citation in this case named the jurisdiction, the defendant, cited the statute, recited the statutory name of the crime, stated the location of the building as "Pilgrim Cong. Church," stated the time of the offense, and stated "said defendant did knowingly or purposely or negligently commit the offense of criminal trespass to wit: fail to leave a building when asked to do so." This citation clearly complies with § 46-11-401, MCA, and therefore we hold that the District Court's denial of Yankowski's motion to dismiss was not an abuse of its discretion.

ISSUE 5

Did Yankowski properly preserve the issue regarding the condition of his sentence that he write a letter of apology?

Yankowski argues that to force him to apologize for criminal trespass is ordering words in his mouth and is a violation of his First Amendment right to free speech, freedom of religion, and freedom of conscience. He also asserts that his compliance with the District Court's order to write an apology would entail

12

committing two or three counts of criminal contempt, as it would violate the preliminary injunction ordering him not to communicate with any petitioner, their families, etc.

The District court's authority to impose conditions or restrictions upon Yankowski in conjuction with his suspended sentence are limited by the provisions of § 46-18-201, MCA. The imposition of the condition requiring Yankowski to write an apology letter is outside the scope of the District Court's authority under § 46-18-201, MCA, to impose reasonable conditions upon sentencing. Therefore, we hereby vacate the condition of Yankowski's suspended sentence requiring him to write a formal letter of apology to the Bridger Clinic, and to Reverend Glover Wagner and the Pilgrim Congregational Church.

## ISSUE 6

Did the District Court err in stating that the Bridger Clinic was conducting a lawful activity and improperly refuse proposed sentencing exhibits?

The State filed a motion in limine to exclude all evidence on the defense of justification, which, in fact, Yankowski stipulated that he was not going to raise on defense. Yankowski argues now on appeal that the Bridger Clinic was unlawfully conducting its workshop. He cites his proposed sentencing exhibits A through M which were excluded by the District Court from the record on the basis of relevancy. The State asserts that these exhibits were

13

properly excluded under Rules 401 and 402, M.R.Evid., as Yankowski never advanced any basis for which the evidence was offered.

This Court has previously held that the evidence is relevant if it naturally and logically tends to establish a fact in issue. State v. Smith (1986), 220 Mont. 364, 715 P.2d 1301. The trial court has broad discretion to prohibit the introduction of irrelevant evidence, and absent a showing that the court abused its discretion, this Court will not overturn the determination of relevancy. State v. Hage (1993), 258 Mont. 498, 853 P.2d 1251. The question in dispute was whether Yankowski engaged in activity which was in violation of the criminal trespass statute. The exhibits offered had no relevancy to this question nor to any fact in issue, and thus were properly excluded by the District Court.

ISSUE 7

Was the issue of justification under § 45-3-102, MCA, properly raised?

Yankowski argues that he "had a right to use force to stop an unlawful use of force" pursuant to § 45-3-102, MCA. He essentially attempts to raise a defense of justification on appeal. This Court will not address this issue, as it is being raised for the first time on appeal. City of Helena v. Lewis (1993), 260 Mont. 421, 860 P.2d 698; § 46-20-104, MCA.

ISSUE 8

Was Yankowski's sentence excessive?

14

Yankowski appeals to this Court to reduce his sentence because he was thrown out of graduate school and was refused employment due to the impending sentence in this case.

The District Court sentenced Yankowski to serve only ten days in jail, which he has not yet done, and to pay a $500 fine. The sentence was within the statutory maximum for the offense committed. The review of sentences for inequity or disparity must be conducted by the Sentence Review Division according to statutes applicable to those proceedings. Petition of Slice (1995), 271 Mont. 337, 896 P.2d 1125. This Court therefore declines to address this issue.

ISSUE 9

Was the motion for mistrial improperly denied?

Campbell testified that she was standing at the registration desk when Yankowski approached, that she knew he was an abortion protestor, and that she was afraid of him because she did not believe he acted rationally and she did not know what he would do. Defense counsel objected on grounds of relevancy, which was overruled. Defense counsel then requested to make a motion outside the presence of the jury, and moved for a mistrial on the basis of other crimes evidence. This motion was likewise denied.

We review the district court's denial of a motion for mistrial to determine whether there is clear and convincing evidence that the court's ruling is erroneous. State v. Romero (Mont. 1996), 53 St. Rep. 1050, 1057; State v. Ford (Mont. 1996), 53 St. Rep. 947,

15

950. This Court has held that **a mistrial** is appropriate only when there is a demonstration of manifest necessity or where the defendant has been denied a fair and impartial trial. <u>Romero</u>, **53 St.** Rep. at 1057. The district court is in the best position to determine the potential for prejudice and therefore has been afforded significant latitude when ruling on these matters. State v. McNatt (1993), 257 Mont. 468, 471, 849 P.2d 1050, 1052.

The State argues that Yankowski failed to properly preserve his objection on "other **crimes** evidence," as his objection was on the ground of relevance. The District Court found the evidence relevant to the issue of the witnesses' identification of Yankowski.

Regardless of whether this issue was properly preserved for appeal, in deferring to the District Court as being in the best position to determine the potential for prejudice, we affirm its denial of the motion for **mistrial** as there was no demonstration of manifest necessity and no evidence that Yankowski has been denied a fair and impartial trial.

ISSUE 10

Did Yankowski waive his right to counsel on appeal?

Although Yankowski raises this issue, the record is abundantly clear that he had several appointed attorneys and has discharged them all. As an indigent defendant, he has the right to a court-appointed attorney during his first appeal of right, but he does not have the right to choose or to demand a different attorney

16

so long as the assistance he was receiving was effective.  State v.
Zackuse (1991), 250 Mont. 385, 833 P.2d 142.  The burden of proof
is Yankowski's to come forward with facts establishing either a
total lack of communication with counsel, or ineffective assistance
of counsel, and bare unsupported allegations are insufficient.
Zackuse, 833 P.2d 142.  We therefore hold that Yankowski
effectively waived his right to counsel on appeal by failing to
accept his court-appointed counsel.

We affirm the judgment of the District Court.  Further, we
affirm the sentence in part, vacating the condition that Yankowski
write a formal letter of apology.

_____
Justice


We concur:

_____
Chief Justice

_____

_____

_____
Justices

17